# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| COREY PRESTON, | ) |  |
|---|---|---|
| Plaintiff, | ) |  |
| v. | ) | Cause No. 1:18-CV-414-HAB |
| FORGE INDUSTRIAL STAFFING, INC., | ) |  |
| Defendant. | ) |  |

## OPINION AND ORDER

The designated evidence, as detailed in the parties' cross-motions for summary judgment, describes workplaces where workers are subjected to repeated harassment and threats, where supervisors engage in sexual relationships with their subordinates, and where consequences for these activities come late, if at all. Plaintiff seems to be at the heart of much of this despicable behavior; he admits to repeatedly calling his female co-workers "bitches," he initiated a verbal confrontation with his supervisor, he engaged in an inappropriate sexual relationship with a management-level employee at Defendant, and used that relationship to insulate him from the consequences of his boorish behavior. When he was finally fired, Plaintiff initiated this lawsuit alleging discrimination and retaliation.

Now before the Court are competing motions for summary judgment from the parties. Having reviewed the briefs and the designated evidence, the Court finds no reason to believe that Plaintiff was fired for any reason other than his boorish behavior and his refusal to accept any alternate placement. Plaintiff has designated absolutely no evidence that he was discharged for being male, or black, or in retaliation for some unidentified protected activity. For the reasons set forth below, summary judgment will be entered in Defendant's favor.

A.   **Factual Background**

The easiest place to begin this sordid tale is at the end. On February 28, 2018, Plaintiff was working at his designated station at Berne Apparel when his direct supervisor, Sherry Cox, walked by discussing productivity numbers with another employee. Plaintiff asked about his numbers and Cox counted to four using her fingers as demonstrative aids. Plaintiff took offense. After considering the full panoply of potential responses, Plaintiff chose to extend both middle fingers in Cox's direction. Cox, in an act equally belonging in a junior high cafeteria, told Plaintiff to stick his middle fingers "up his butt." Plaintiff interpreted this statement as an accusation that he was a homosexual; why is anyone's guess. This angered Plaintiff, who then proceeded to call Cox (again, his direct supervisor) a "bitch." For his conduct Plaintiff received a demotion and a reduction in pay.

In the aftermath of this incident, it became clear that Plaintiff's conduct toward Cox was not an aberration. Take Jacey and Jill Ratliff, mother and daughter, for instance. Plaintiff verbally assaulted them in November 2017, calling them "stankin' ass bitches," telling both that he had "something" for them, and telling both "fuck you bitches" as the three returned to work following their lunch break. This incident came a day after Plaintiff called Jacey Ratliff a "nasty bitch" and a "stankin' ass bitch," and then proceeded to ask Jacey to "put your legs down you making it smell over here." Charming.

Plaintiff didn't deny any of this. Rather, he blamed the two women. According to Plaintiff, Jacey had told other female employees that he was "a low down" and that he had given Jill a sexually transmitted disease. She further stated that Plaintiff had moved into the Ratliff home and failed to pay rent. Plaintiff was angered and admitted to calling Jacey "a bitch many of time." (all sic).

Later that same month, Plaintiff had a verbal altercation with Cox over Berne's walkie talkie system. Plaintiff asked Cox why totes were being placed on the wrong line. Cox responded that she didn't know, and further advised Plaintiff that they were not to have this kind of conversation over the radio. Plaintiff, in his own words, told Cox "she heard what the fuck I said." According to Cox, Plaintiff also stated that he didn't "believe that shit. Fuck that shit."

Cox and Plaintiff had a difficult working relationship. Each accused the other of sexual harassment. Cox accused Plaintiff of asking her if he could come to her house naked amongst other "sexual and vulgar things." Multiple co-worker's corroborate Cox's reports. One co-worker reported seeing Plaintiff attempt to touch Cox's rear end (Cox would later report that Plaintiff succeeded), while another stated that Plaintiff told Cox that she "wanted his dick." For his part, Plaintiff accused Cox of telling him that he looked nice and had nice hair.

After these and other incidents came to light, Berne asked that Plaintiff not return to work. Berne also provided Forge[1] with its investigation file, which included all the foregoing incidents and more. This was apparently not enough to get Plaintiff fired, as he was offered a different job assignment at a different company. Plaintiff turned down that assignment and advised that he was not currently looking for work. Plaintiff finally terminated by Defendant on March 15, 2018.

Why was Plaintiff allowed to get away with this kind of behavior over such an extended period? The answer, befitting the rest of this saga, was that Plaintiff was sleeping with Defendant's Manager of Operations at its Fort Wayne office, Terra Ditton. Ditton had repeatedly told Defendant's staff members to overlook and not document Plaintiff's behavior. Ditton also instructed at least one subordinate not to talk to Defendant's human resources department or upper

---

[1] Forge, which is a temporary staffing agency, had assigned Plaintiff to Berne. Forge remained Plaintiff's employer throughout the relevant period of time

management about Plaintiff's conduct. When the full extent of the relationship between Plaintiff and Ditton came to light, she was terminated by Defendant.

**B.      Legal Analysis**

**1.      *Summary Judgment Standard***

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The non-moving party must marshal and present the court with evidence on which a reasonable jury could rely to find in their favor. *Goodman v. Nat'l Sec. Agency, Inc*., 621 F.3d 651, 654 (7th Cir. 2010). A court must deny a motion for summary judgment when the nonmoving party presents admissible evidence that creates a genuine issue of material fact. *Luster v. Ill. Dep't of Corrs*., 652 F.3d 726, 731 (7th Cir. 2011) (citations omitted). A court's role in deciding a motion for summary judgment "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe. The court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoechst Corp*., 24 F.3d 918, 920 (7th Cir. 1994).

Facts that are outcome determinative under the applicable law are material for summary judgment purposes. *Smith ex rel. Smith v. Severn*, 129 F.3d 419, 427 (7th Cir. 1997). Although a bare contention that an issue of material fact exists is insufficient to create a factual dispute, a court must construe all facts in a light most favorable to the nonmoving party, view all reasonable inferences in that party's favor, *Bellaver v. Quanex Corp*., 200 F.3d 485, 491–92 (7th Cir. 2000), and avoid "the temptation to decide which party's version of the facts is more likely true," *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). Additionally, a court is not "obliged to research and construct legal arguments for parties." *Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011).

The fact that the parties have filed cross-motions for summary judgment does not alter the standard. When evaluating each side's motion, the court simply "construe[s] all inferences in favor of the party against whom the motion under consideration is made." *Metro. Life Ins. Co. v. Johnson*, 297 F.3d 558, 561–62 (7th Cir. 2002) (quoting *Hendricks-Robinson v. Excel Corp.*, 154 F.3d 685, 692 (7th Cir. 1998)).

**2.    *Plaintiff's Motion for Summary Judgment***

Although Plaintiff's pro se summary judgment filings violate most, if not all, of the requirements of Federal Rule of Civil Procedure 56, the Court believes that it can discern the thrust of his arguments. In support of his request for summary judgment, Plaintiff argues that because the Indiana Department of Workforce Development found that he "was not discharged for just cause," he necessarily wins this case. Ignoring, for a moment, that this argument fails to address the legal requirements for any of his claims, Plaintiff is incorrect as to the legal effect of IDWD's determination.

The Seventh Circuit has evaluated, and rejected, Plaintiff's argument in the past. In *McClendon v. Indiana Sugars, Inc.*, 108 F.3d 789 (7th Cir. 1997), the plaintiff argued that his success at the IDWD was relevant as a "credible finding" that he had not violated a rule of his employer. *Id*. at 798. Noting the different requirements of a federal discrimination lawsuit and an unemployment action, the court found the IDWD proceedings irrelevant.

> It is important to note that the issue in an Indiana unemployment compensation proceeding is whether an employee was terminated for just cause and thus is ineligible for unemployment benefits. *See Gibson v. Review Bd. of Ind. Dep't of Workforce Dev.*, 671 N.E.2d 933, 934 (Ind. App. Ct. 1996). Under Indiana unemployment compensation law, it is, moreover, the employer who must make the prima facie showing that the employee was discharged for employment-related misconduct within the meaning of § 22–4–15–1 of the Indiana Code. The employer has the burden of showing that he had "just cause" for the termination because "the claimant: (1) knowingly violated; (2) a reasonable; and (3) uniformly enforced

rule." *Butler v. Review Bd. of Indiana Dep't of Employment & Training Servs.*, 633 N.E.2d 310, 312 (Ind. App. Ct.1994).

> By contrast, the issue in this retaliatory discharge determination is whether the employee was terminated in retaliation for engaging in some form of protected expression (e.g., the filing of a lawsuit). The burden of proof was distinctly different in each proceeding. Once the employer has put forth a non-discriminatory reason for the discharge in reply to the employee's prima facie case, it is the employee's burden to demonstrate that this non-discriminatory reason is pretextual.

*Id.*

So it is here. The record does not demonstrate what, if any, evidence Defendant introduced during the unemployment proceedings. It may very well be that Defendant did not meaningfully contest Plaintiff's claim. Certainly, its withdrawal of its appeal is some evidence that it did not view the IDWD as the appropriate forum to litigate Plaintiff's termination. But even if the adverse decision by the IDWD came in response to a strident defense by Defendant, the differences in the proceedings, as set forth in *McClendon*, would require this Court to find IDWD's conclusion irrelevant. Certainly, this Court could not, and will not, find the IDWD's conclusion to be conclusive as to the outcome of this case. Because Plaintiff raises no other issues in support of his request for summary judgment, that request will be denied.

**3.** *Defendant's Motion for Summary Judgment*

**a.** <u>Plaintiff's Discrimination Claim</u>

To prevail on his sex or race discrimination claims, Plaintiff must either show direct evidence of discriminatory motive or intent or rely on the indirect burden-shifting method outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Plaintiff has not selected either option. However, because Plaintiff does not designate any direct evidence of discrimination, *McDonnell Douglas* is the only method at his disposal. *Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1173 (7th Cir. 2002). Under this approach, a plaintiff must present evidence tending to show that

he is a member of a protected class, that he was meeting his employer's legitimate expectations; that he suffered an adverse employment action, and that similarly situated individuals were treated more favorably than he was. *Farr v. St. Francis Hosp. and Health Ctrs.*, 570 F.3d 829, 833 (7th Cir. 2009). If a plaintiff can establish these four elements, the defendant has an opportunity to articulate a legitimate, nondiscriminatory reason for its action. If the defendant does so, the burden shifts back to the plaintiff and he must offer evidence showing that the defendant's excuse is pretextual. *Id*. This analysis is the same whether a court is analyzing a claim under Title VII or § 1981. *Fane v. Locke Reynolds, LLP*, 480 F.3d 534, 538 (7th Cir. 2007). At the end of the day, the Court must determine whether a reasonable juror could conclude that Plaintiff would have kept his job if he were a member of a different class, and everything else stayed the same. *Ortiz v. Werner Enter., Inc.*, 834 F.3d 760, 763 (7th Cir. 2016).

Because it "is the unusual employer who discriminates against majority employees," *Mills v. Health Care Serv. Corp*., 171 F.3d 450, 456–57 (7th Cir. 1999), a male plaintiff alleging gender discrimination must show something more than the fact that he is gendered. *See*, *e.g*., *Katerinos v. U.S. Dep't of Treasury*, 368 F.3d 733, 736 (7th Cir. 2004). Rather, the plaintiff in such cases "must show background circumstances that demonstrate that a particular employer has reason or inclination to discriminate invidiously against whites [or men] or evidence that there is something 'fishy' about the facts at hand." *Phelan v. City of Chi.*, 347 F.3d 679, 684 (7th Cir. 2003) (internal quotation omitted).

Whether described as a failure to meet legitimate expectations or as a nondiscriminatory basis for termination, the Court finds that Plaintiff's behavior at the workplace is more than sufficient to defeat his discrimination claims. When Plaintiff began his employment with Defendant, he agreed to the policies and procedures contained in the Forge Industrial Staffing

7

Employee Handbook. (ECF No. 51-4). The Handbook provided that certain conduct was grounds for immediate termination, including:

> h.  Insubordinate behavior towards Forge Industrial Staffing or a client
>
> i.  Misconduct, including, but not limited to, stealing, fighting, threatening or abusive language or conduct, violating the Company's anti-harassment policy, or possessing firearms on Company/client premises or while on client assignment.

(*Id*. at 3). The Court has no trouble concluding that referring to one's co-workers as "stankin' ass bitches," "nasty bitches," or simply "bitches" when he was short for time, to say nothing of flipping off one's immediate supervisor and calling her a "bitch," satisfies one or both of these grounds for termination. These violations of Defendant's policies are fatal to his discrimination claims. *See Contreras v. Suncast Corp.*, 237 F.3d 756, 760–61 (7th Cir. 2001) (plaintiff failed to show he was meeting legitimate expectations where he had been repeatedly cited for rules violations); *Hugley v. Art Inst. of Chi.*, 3 F. Supp. 2d 900, 907 (7th Cir. 1998) (violation of employer rules is a legitimate, nondiscriminatory reason for termination).

Of course, because Plaintiff had successfully gamed the system by developing a relationship with Ditton, he was insulated from the worst circumstances of his behavior. While any other employee would likely have been terminated for the Ratliff incident, it was not until Plaintiff was prevented from returning to Berne and refused to accept any different job that he was finally terminated by Defendant. What more could Defendant do at this point? Defendant is a temporary staffing agency that places workers in positions with companies. If the worker refuses to take ***any*** position, there is no reason for Defendant to retain that employee. It is not at all clear to the Court, then, that Plaintiff was even subject to an adverse employment action. Rather, it appears that he simply refused to work. Plaintiff's abandonment of his employment is yet another reason to enter judgment against him. *EEOC v. Costco Wholesale Corp.*, 903 F.3d 618, 628 (7th

8

Cir. 2018) ("an employee who fails to return to work rather than resigning cannot bring a constructive discharge claim.").

Plaintiff's only real response to his conduct is to describe Defendant like a Tatooine spaceport: a wretched hive of scum and villainy. Plaintiff asserts that sexual harassment (particularly among management) and drug use are rampant. In one of his more fantastical claims, Plaintiff asserts that "the big wigs have partys [sic] and the girls would get drunk and all would have a sexual encounter with one another." (ECF No. 56-1 at 25). Indeed, Plaintiff broke off his relationship with Ditton because he believed she was sleeping with Defendant's regional manager. But even if this is all true, Plaintiff fails to demonstrate how this relieves him of responsibility for his repeated violations of societal norms and corporate policies.

The only conceivable basis for these scandalous accusations would be to show disparate treatment of similarly situated employees. In deciding whether someone is "similarly situated," courts conduct a "flexible, commonsense examination of all relevant factors." *Coleman v. Donahoe*, 667 F.3d 835, 846 (7th Cir. 2012) (citation and internal quotation marks omitted). To be similarly situated, an employee must be "directly comparable to the plaintiff in all material respects." *Id.* (citation and internal quotation marks omitted). A court's inquiry on this point should not be mechanical, but typical cases require a plaintiff to show "that the comparators (1) dealt with the same supervisor, (2) were subject to the same standards, and (3) engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Id.* (citation and internal quotation marks omitted). Plaintiff does not attempt to demonstrate that his allegations of misconduct satisfy any these requirements.

None of the allegations that Plaintiff makes involve any employee that called their supervisor, as well as other female co-workers, derogatory names. The employees identified by

Plaintiff are all managers and other "big wigs," not temporary employees like Plaintiff. These managers would not have had the same supervisor as Plaintiff. None of the identified employees refused to work as Plaintiff did. The Court finds that none of the "big wigs" are similarly situated to Plaintiff. Summary judgment in Defendant's favor is appropriate.

**b.** Plaintiff's Retaliation Claim

To make out a claim of retaliation, a plaintiff must show that: (1) he engaged in protected activity; (2) he suffered an adverse employment action; and (3) a causal connection exists between the two. *King v. Ford Motor Co.*, 872 F.3d 833, 841 (7th Cir. 2017). In deciding the question, the Court must consider the evidence as a whole and ask whether a reasonable juror could draw an inference of retaliation. *Id.* (citing *Ortiz*, 834 F.3d at 764–66).

Plaintiff's retaliation claim fails for much the same reasons as his discrimination claims. Plaintiff was not fired for engaging in some protected activity (and Plaintiff inconsistently identifies what that activity might have been); he was fired for reprehensible behavior that would be inappropriate in any workplace and the abandonment of his position with Defendant. As such, Plaintiff cannot demonstrate the required causal connection, and his retaliation claim fails.

**C.    Conclusion**

For the foregoing reasons, Plaintiff's Motion for Summary Judgment (ECF No. 53) is DENIED. Defendant's Motion for Summary Judgment (ECF No. 50) is GRANTED. In light of the Court's determination, Defendant's Motion to Strike (ECF No. 60) is DENIED as moot.

SO ORDERED on March 27, 2020.

    s/ Holly A. Brady
JUDGE HOLLY A. BRADY
UNITED STATES DISTRICT COURT